## OSCAR L. BRITTON

### *v.*

## JOSEPHINE BRITTON.

1. A suit for divorce, on the ground of adultery, was brought in this state by a husband against his non-resident wife. She had no actual notice thereof. The husband's solicitor deposed that he was unable to discover her residence, and the usual order and publication of notice were made. A decree *pro confesso* followed.—*Held*, upon the wife's petition, and satisfactory proof that her husband had known her residence and concealed it from his solicitor, that the decree be opened and she allowed to defend.

2. The petition and affidavits were served on the husband's solicitor, who, on the return of the rule to show cause, alleged surprise, and obtained an adjournment in order to communicate with the husband, who was then living out of the state, and also to cross-examine the affiants. It seems that the solicitor relied upon the wife to produce the affiants afterwards for cross-examination in open court.—*Held*, that it was then too late to object that the petition &c. had not been served according to the rules of the court.

---

On petition to set aside final decree granting a divorce.

*Mr. M. B. Taylor* and *Mr. D. J. Pancoast,* for the petitioner.

*Mr. R. T. Stout* and *Mr. W. T. Hoffman,* for the complainant.

BIRD, V. C.

The complainant filed his bill praying for an absolute divorce from his wife on the ground of adultery. It was alleged that this offence was committed with one Dudley.

The defendant was not personally served with process. The complainant depended on bringing the defendant in by publication, under the statute and the rules. The required notice was duly issued and published. There was some show or effort to reach the defendant by sending the notice in compliance with the rules, but when this effort comes to be carefully examined it will be seen that it is very far from their plain requirements, and, beyond doubt, so managed as to avoid the rules. Whoever furnished the information to the solicitor, on which he relied, undoubtedly withheld the most essential facts.

The defendant was not notified of these proceedings.

She now comes in, by her petition, and asks for an order opening the decree, and that she may be permitted to plead or to answer the charge of adultery made against her on which the decree is based. She denies all notice, and I have every reason to believe that she never received any. I also believe, from the evidence,

---

NOTE.—Decrees of divorce were set aside where an order of publication of the summons was obtained on the false oath of the complainant that he was unable to ascertain defendant's residence, and the summons and complaint were not served personally, or through the post-office, as required by statute, and defendant had no actual notice of the suit until after decree rendered, *Johnson* v. *Coleman, 23 Wis. 452;* or, that complainant did not know defendant's residence or stopping-place, *Crouch* v. *Crouch, 30 Wis. 667; Holmes* v. *Holmes, 63 Me. 420; Bryant* v. *Austin, 36 La. Ann. 808;* or, in addition, caused the notice to be published in an obscure newspaper, that complainant had every reason to believe neither the defendant nor her friends would see, *Adams* v. *Adams, 51 N. H. 388;* or, in a German newspaper, *Everett* v. *Everett, 60 Wis. 200.*

The cases of *Greene* v. *Greene, 2 Gray 361,* and *Parish* v. *Parish, 9 Ohio St. 534,* which hold a contrary doctrine, may be deemed overruled; see *Edson* v. *Edson, 108 Mass. 590; Allen* v. *Maclellan, 12 Pa. St. 328; Caswell* v. *Caswell, 120 Ill. 377.*—REP.

Britton v. Britton.

that the complainant made every effort to avoid giving notice by refusing to disclose the facts to his solicitor. To say that he did not know the residence of his wife—the street and number of her dwelling—is downright mockery. For twenty-three years. prior to the time of filing this bill Mrs. Britton had lived in the same house and on a street the name of which had not been changed. Here she lived in her childhood, when the complainant first became acquainted with her; and there, too, she lived and went to school—at the same school that he attended. Here also she resided during many months of their courtship, and from this same residence he led her to the altar to be joined in wedlock. And here, likewise, he lived with her for several months. after their marriage. Besides these facts, the complainant had a mother who resided in the same city at the time of the marriage,. and from thence until the decree in this cause was entered, at whose house the complainant was a constant visitor. To all which may be added the fact that, for a good part of the time,. his place of business was in the same city.

With all these facts before the mind it is impossible to avoid the conclusion that he knew the residence of his wife as well as he did his mother's, or his own. Hence, I conclude that his failure to give the requisite notice to his wife was nothing more nor less than a studied evasion of the law, with the intent of gaining thereby a legal advantage over his wife, and if the charge on which he rests his case should be untrue, to clothe her, by the forms of law, with infamy and disgrace. The citizen may sometimes suffer unjustly under the best or most humane forms of government or of administration; but as I understand the spirit of our legislative enactments on this subject, and the rules of the court which have been adopted to aid in carrying out those enactments, it is to guard against any possible imputation of wrong in severing the marriage relation, so far as procedure is. concerned.

If there were no other evidence in the cause than that to which I have adverted above, the court could not allow this decree to. stand without the most serious misgivings of great injustice against the rights of the defendant, and also of the embarrassment

which such a practice must present to the face of the court in the future. It is not simply a question of surprise to the defendant; nor one of merits as between the parties; it involves very much more than these; for the public are interested, and it is the plain duty of the court to see to it that no divorce is wrongfully or fraudulently obtained. And if it be fairly made to appear to the court, after a decree has been signed, that any such condition exists, the decree itself is no bar to a proper inquiry. The court has entire control over its own decrees, and, in every such case, should not be slow to ascertain if wrong has been done, and, if so, to wipe it out. I believe every court would, on proceedings in divorce, do this on its own motion, in case it should believe it had been imposed on. No court could, by any possibility, maintain its integrity and the public confidence, should it allow such cases to stand unannulled, after once knowing that it had been beguiled by evasion, deception and falsehood.

On filing the petitions and affidavits in this cause, an order was made on the defendant to show cause why the decree in his favor should not be opened, and the defendant permitted to answer his bill. The petition and affidavits were duly served on the counsel of the complainant. His counsel both appeared on the return of the order and procured an adjournment of the hearing of the cause on the order, on the ground that the matters set up were new to them, and that their client now lived in California, and that they had not had time to communicate with him.

Upon the day to which the cause was so adjourned, the counsel for complainant again appeared, and as they said they were not familiar with the practice in such cases, and made inquiry respecting it, they were informed that when a copy of the petition and affidavits were served on the party against whom relief was asked, the said petition and affidavits, together with such affidavits as might afterwards be taken and served, or taken on notice, under the rules, were allowed to be read on the argument. Counsel then intimated that this course of procedure was a surprise to them, saying that they had relied on having the persons who had made the affidavits on which the petition was based present in open court, to be examined by them by way of cross-

examination. Although this was thought to be very extraordinary, the court said, since counsel declared that they had relied on this course as the settled practice of the court, and upon the cross-examination of the affiants in behalf of the defendant, in opposition to the making of the order absolute, that the cause should again stand over, not, however, for the defendant to bring in the said affiants for cross-examination, but to give the complainant an opportunity to bring them in, or to take their affidavits. The cause was adjourned; and with the distinct understanding that on the coming in of counsel again the petition and affidavits would be read, and the said affiants, so far as they could be brought in by the complainant, might be cross-examined by him.

At the time to which the cause was so adjourned, the defendant offered to read the petition and affidavits which had been served under the rules, to all of which the counsel for complainant objected, stating, as ground of objection, that the same had not been served according to the rules. However, the petition and affidavits were allowed to be read. It was considered out of place for the complainant to raise such objection at this time, after the indulgence which had been granted him, and after the understanding that these papers were all to be read, and especially when the defect in the service did not appear, and no objections to the manner of their service had previously been made.

But suppose the petition and the affidavits not annexed to the petition (leaving out the affidavits so annexed) be considered, and how does the case then stand? Then is there enough proof to sustain an order opening the decree? In my judgment, with the proof thus furnished, there is no room left for controversy.

The decree should be opened. If the complainant be right, no great harm will be done to him, compared to the wrong done in the administration of the law by tolerating the evasion of the well-settled rules of practice in order to obtain a decree. And whether any wrong was intended or not in the manner in which that result was obtained, the court cannot but regard it as the only satisfactory course to give the defendant an opportunity of being heard. I will so advise.